**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CRAIG BEISNER, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| PERION NETWORK LTD., DORON GERSTEL, TAL JACOBSON, and MAOZ SIGRON, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Craig Beisner ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon personal knowledge as to Plaintiff, and upon information and belief as to all other matters based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of documents filed by Defendant Perion Network Ltd. ("Perion" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"), research reports issued by securities and financial analysts, press releases issued by Defendants, media and news reports, and other publicly available information about Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a securities fraud class action on behalf of all those who purchased, or otherwise acquired, Perion common stock during the period from February 9, 2021 through April 5, 2024, inclusive (the "Class Period"), who were damaged thereby (the "Class"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10 b-5.

2.     Perion is a global technology company that provides digital advertising solutions to brands, agencies, and publishers in North America, Europe, and internationally.

3.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material facts, including that: (1) Perion's search advertising business was not a reliable and significant growth driver and was in fact in decline; (2) Perion's long-term relationship with Microsoft and search services agreement would not provide stability for Perion's search advertising business; (3) there was an increased risk of Microsoft acting to unilaterally change its advertising pricing and mechanisms to the detriment of Perion while the search services

agreement was in place; (4) Perion's AI technology and Microsoft's investment in ChatGPT would not protect or grow Perion's search advertising revenue; and (5) based on the foregoing, Defendants lacked a reasonable basis for their positive statements about Perion's search advertising business and related financial results, growth, and prospects.

4.      On April 8, 2024, Perion issued a press release announcing preliminary financial results for the first quarter of 2024 and updated full year 2024 guidance, revealing that "[i]n the first quarter of 2024, Perion experienced a decline in search advertising activity, attributable to changes in advertising pricing and mechanisms implemented by Microsoft Bing in its Search Distribution marketplace." Perion further revealed that, "[t]hese adjustments led to a reduction in Revenue Per Thousand Impressions (RPM) for both Perion and other Microsoft Bing distribution partners" and "contributed to decreased search volume." The Company also revealed that for the full 2024 year, it now expects revenue in the range of $590 million to $610 million, down from the prior guidance range of $860 to $880 million the Company gave on February 7, 2024.

5.      On this news, the price of Perion common stock declined by $8.61 per share, or approximately 40%, from $21.11 per share on April 5, 2024 to close at $12.50 on April 8, 2024.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and 1367, and pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa.

8.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1931(b), as the Company has its principal executive offices located in this District and conducts substantial business here.

10.     In connection with the acts, omissions, conduct, and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11.     Plaintiff, as set forth in the accompanying certification, which is incorporated by reference herein, purchased Perion common stock during the Class Period and has been damaged thereby.

12.     Defendant Perion Network is a global technology company that provides digital advertising products and services. It is headquartered in Holon, Israel and maintains offices in the United States, including in New York. The Company's stock trades on the Nasdaq under the ticker symbol "PERI."

13.     Defendant Doron Gerstel ("Gerstel") served as Chief Executive Officer ("CEO") and Director of Perion from April 2017 to August 2023.

14.     Defendant Tal Jacobson ("Jacobson") has served as CEO and Director of Perion from August 2023 to the present. Prior to his appointment as CEO, Jacobson served as General Manager of CodeFuel, Perion's search advertising business.

15.     Defendant Maoz Sigron ("Sigron") has served as the Chief Financial Officer ("CFO") of Perion at all relevant times.

16.     Collectively, Defendants Gerstel, Jacobson, and Sigron are referred to throughout this complaint as the "Individual Defendants."

17.     The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to its issuance and had the ability and opportunity to prevent the issuance of these false statements or to cause them to be corrected.  Because of their positions with the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading.  The Individual Defendants are liable for the false statements pleaded herein.

18.     Perion and the Individual Defendants are referred to herein, collectively, as "Defendants."

## SUBSTANTIVE ALLEGATIONS

19.     Perion is a global technology company that generates its revenue primarily from two major sources, display advertising and search advertising. In 2023, 46% of Perion's revenue was derived from search advertising, which is generated from service agreements from the Company's search partners and monthly transaction volume-based fees. Perion's search advertising business is also referred to by the Company as CodeFuel.

20.     Perion's most significant search partner and largest source of revenue is Microsoft. The Company entered into its first agreement with Microsoft in 2010 and then entered into its current search services agreement in November 2020, which is effective from January 2021 through December 2024. Perion's current agreement with Microsoft accounted for 37%, 35%, and 34% of Perion's revenue in 2021, 2022 and 2023, respectively.

21.     Throughout the Class Period, Defendants touted Perion's strong relationship with Microsoft to investors and repeatedly made positive statements about the Company's search advertising business, including increased capabilities in AI and benefits stemming from increased use of ChatGPT. While touting the attractiveness of search advertising, the Company was steadily shifting focus away from search advertising to its display advertising business, including connected TV ("CTV"), which Defendant Gerstel represented grew by 311% in 2021. Despite the Company's historical focus on search advertising, Perion's display advertising segment grew to account for 56% of Perion's revenue in 2023, compared to 45% of revenue in 2020.

22.     At the same time, Defendants continued to represent that Microsoft Bing and the search advertising business were steady and growing rapidly, with Defendant Gerstel describing the Microsoft agreement as a "sustainable, predictable stream of revenue" on February 9, 2021 and later stating on February 8, 2023 that it "continues to be one of our most profitable and sustainable exploit solutions" and that their numbers of publishers and monetized number searches, transferred mainly to Bing, were "robust and impressive." Defendant Gerstel also represented that if "ChatGPT sparks even modest share gains, Microsoft can do very well… ***and as a strategic partner of Microsoft Bing, I'm sure we will be benefiting from this increase***" and "***I have no doubt that we will benefit from I think what Microsoft Bing is doing***."

23.     On April 8, 2024, Perion's announcements of its preliminary financial results, decreased expectations for revenue and adjusted EBITDA for Q1 and the full 2024 year, and the drop in search advertising pricing due to unilateral changes made by Microsoft Bing, revealed that Perion misrepresented the strength of its relationship and existing agreement with Microsoft, as well as the continued growth of its search advertising business.

24.     Despite representing to investors that Perion's relationship with Microsoft was stable and growing, including Defendant Gerstel's statements that "we are having an endless demand that is coming from this direction through the Microsoft Bing" and as a result of ChatGPT, "we will have more in terms of searches, and right now, you've seen the numbers and we're expecting them to grow[,]" Perion's interests were not secure under the Microsoft agreement, although it was solidified in 2020 and intended to last through 2024. Investors were unaware that Microsoft would benefit from undercutting Perion's interests and unilaterally changing its search distribution marketplace despite the search services agreement currently in place. As a result of Defendants' misleading statements and omissions, investors were unaware of the true nature of the Microsoft agreement and the sustainability of Perion's search advertising business.

**DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS**

25.     The Class Period starts on February 9, 2021, when Perion held an earnings call about its reported financial results for its fiscal 2020 fourth quarter. On the call, Defendant Gerstel represented to investors, in response to an analyst's question about the new Microsoft agreement, that the Company's relationship with Microsoft was stable and had been strengthened by the new agreement, stating:

> So I was honored to do the -- not the last one, but also the previous one. So we did the previous one in October 2017 for 3 years. And we did this one -- announced it in November 2, 2020, and it's quite a difference, quite a difference not just in duration. The last one was for 3 years. This is a 4-year. **For those who know**

*Microsoft doing a 4 years' agreement is we are part of a very few vendors that being able to engage for such a long period of time. And that's why they require for us not just to renew or extend the agreement in terms of amendment, but definitely writing the new agreement from scratch.*

*But it's not just about 4 years or more years in terms of contract. I think the main important factor has to do with better rev share, that's one. So we have higher tiers that represent where we are right now. So we are going to get more margin from Microsoft, one. Second, expanded to new geography. In the previous agreement, we were limited to 6 countries, currently to 34 countries, which is part of Microsoft advertising overall geography expansion strategy. And the third is that we are now able to offer our market new products, new products that we were not able to do on the previous agreement.*

So all in all, this is why we basically share that our estimate that in the course of the next 4 years, we were able to generate $800 million from this agreement, and $200 million in average on annual revenue. Currently, we're in the level of $172 million. So that's definitely a significant increase. And what I'm more happy with is the fact that *it's a sustainable, predictable stream of revenue that has to do with this pillar, search advertising*. That based on any KPI that we're looking, and I shared one of them, which is the average daily traffic, it's definitely moving in the right direction, and it is generating for us substantial revenue.

26.     During the March 8, 2021 investor call, Defendant Gerstel further stated, in response to an analyst's question about Bing gaining market share, that: "Bing is now part of Microsoft advertising. That's an organizational change that happened last year. And I must say that *we are now part of a way larger business unit that's providing us a great possibility for as well as demand and supply because of our tight relationship with Bing*."

27.     On the same call, Defendant Jacobson touted Perion's increased capabilities in AI, stating:

In the last 2 years*, we invested heavily in technology, in AI machine learning. And through that, we were able to increase our business coming to over 9 billion searches a year*, helping advertisers find customers at the exact moment at the exact place. We signed a strategic agreement with Microsoft, which we'll talk about in a minute, and *we're working with different search providers to help us gain more and more markets worldwide. And we also work on different new technologies and products, hand-in-hand with Microsoft, and I'm happy to say that we're seeing some very positive signals from those products*.

28.    During the May 4, 2021 earnings call, Defendant Gerstel further reiterated the benefits of Perion's long-term relationship with Microsoft, stating: "***The long-term renewal with Microsoft Bing help us even further, giving publisher confidence in our search offering and help drive our 22% growth in this segment***."

29.    During the August 3, 2021 earnings call, Defendant Gerstel touted the Company's progress in technology and AI in search advertising, stating:

Perion is now operating in a clear strategic direction, leveraging our strong financial position to increase investment in technology and to accelerated growth. ***To demonstrate the effectiveness of our strategic framework, 18 months ago, we announced the goal of enhancing our advertising capability dramatically while focusing on technology and AI, resulting in 127% revenue growth in the first half of 2021. This demonstrates the market fleet of our platform made possible by relentless innovation and strategic acquisitions.***

\* \* \*

***Our search advertising business is demonstrating its ability to capture intent and turn it into revenue by using AI to serve relevant news, shopping and information driven content. Its searches are up more than 30% year-over-year.***

30.    During the October 26, 2021 earnings call, in response to an analyst's question about the role of search and Bing, Defendant Gerstel responded:

So first and foremost, the search is 2 very important strategic role. ***First, it's a very stabilized, I think, business and the fact that we're working with Microsoft Bing and now we added Yahoo into the picture, is very much stabilized it. It's growing. We have a publisher that is working for us for years, and we have a very, very good, stable type of business.*** And I think that fact, as I said, the transactional searches among the entire searches is growing, that's great. This is from the revenue and the EBITDA, I think, contribution standpoint. ***But the most important part, and this is a very interesting, and I must say that it's growing and it's growing in such a way that it's going to be a huge factor is how search, and in this case, D to S is display to search.*** Display is an ad unit that we are very much placed either in our site or site that we operate in, generating search. This is a very interesting technology that we develop based on contextual match and other things. ***So we are having an endless demand that is coming from this direction through the Microsoft Bing.*** So we are definitely looking to invest more on this segment of the search business. So I think that we are happy with the results.

31.    During the April 28, 2022 earnings call, in response to an analyst's question about Perion's growth trends in the search business and the dynamic with Microsoft and Google, Defendant Gerstel stated:

> *So first and foremost, we are not competing with them. We are partnering with them.* And basically, we are providing them search fees. In other words, *we are working with our partners, and we are using a lot of -- in this case, being as a partner, their tools, how to increase the number of quality searches. And that's very much the idea. So I think that what we've seen is that from -- again, from the advertiser standpoint, the attractiveness of search advertising is definitely there*. User expressed the highest possible intent that advertisers are so much looking for -- we see that the RPM, which the equivalent to a CPM is going up and we've seen that in some categories, and now we have a very, very good view of how much advertising spend on what keywords, et cetera, only the fact that we are exposed to a huge amount of searches every day*. There are some categories that are growing. There are some that do not. I mentioned the fact that travel is growing and growing very nicely. It's only the beginning. It's a – it's not at the point that it was before, let me put it this way, but it's definitely in the right direction.
>
> So I'm very optimistic as far as the search is our search business.

32.    During the August 3, 2022 earnings call, Defendant Gerstel further addressed Perion's market share in search advertising and RPM, stating:

> *And we are gaining search market share and becoming a stronger player in the search ecosystem*. So in search advertising, we are reporting 26% year-over-year growth to a $65 million of revenue in the second quarter. What is more important for our KPI is the following. While we see that the number of searches are in a way flat between the quarters. We are reporting 17% and it was around 17.1% a year ago. *What is more important is the fact that advertisers are willing to pay more for their Ad in search advertising. In other words, our RPM, the rate per 1,000 clicks on search advertising is being increased by 43% quarter-over-quarter*.

33.    During the February 8, 2023 earnings call, Defendant Gerstel again touted the profitability and sustainability of search advertising, stating:

> Last on the exploit side is direct response, or what we call the search advertising. *Our portfolio and healthy direct response solution via search advertising continues to be one of our most profitable and sustainable exploit solutions. The business is driven by 2 levers: increasing the number of publishers and aggregate number of monetized number searches we transfer, mainly to Microsoft Bing. That number is robust and impressive.* We are reporting today 22 million average

of daily - I repeat, daily search that is going through us in Q4 2022, an increase of 26% year-over-year. *This number is growing every day and I can tell you that this quarter, actually the first 5 weeks of the quarter, we are seeing 25 million searches, daily searches or average daily searches*.

34.     Defendant Gerstel also addressed the potential benefits of ChatGPT, stating:

Microsoft Bing currently is only 3% of the global search market. If the new Bing search with ChatGPT sparks even modest share gains, Microsoft can do very well in the business. As their CFO, Amy Hood said yesterday, *every percentage point of share it gains in search equals roughly $2 billion in additional advertising revenue, and as a strategic partner of Microsoft Bing, I'm sure we will be benefiting from this increase*.

Let me also point out that *ChatGPT, which is the number one technology story of the year, fits beautifully in our exploit-explore framework.* In parallel, we will develop new exploratory applications of what AI can accomplish in our technology stack.

35.     In response to an analyst's follow-up question about ChatGPT and Microsoft, Defendant Gerstel stated in relevant part:

*The other thing is if advertisers would be willing to spend more because we believe that the demand will be higher, it will increase the RPM, so with those 2 factors by itself, and I'm not here talking about any kind of technology cooperation or something that we're able to do this, only by that, I have no doubt that we will benefit from I think what Microsoft Bing is doing*, and it's all about giving a fight to Google and become more dominant from the 3% market share that they have today, so that's clear.

36.     In addition, in announcing Defendant Jacobson's appointment to CEO, Defendant Gerstel stated that the Company has "strengthened our relationship with Microsoft Bing" and that under Jacobson's leadership, CodeFuel "*further developed our strong and mutually beneficial partnership with Microsoft Bing*." Defendant Jacobson stated in response: "My task was to transform the search business, which was in a period of decline, into a sustainable, profitable growing business. *By solidifying our key relationship with Microsoft Advertising, investing in technology, and focusing on quality, we achieved just that. Today, our search advertising business enjoys a robust relationship with Microsoft Advertising*."

37.     On March 15, 2023, Perion filed its Form 20-F for the fiscal year ended December 31, 2022 (the "2022 20-F"). In the 2022 20-F, Defendants Perion, Gerstel, and Sigron stated: "It is expected that ChatGPT will revolutionize Bing search capabilities by providing more advanced and intuitive search experiences for its users, better meeting their needs and expectations. ***We believe that such superior search results will increase advertiser spending and as a result, we expect a potential positive impact on our search business***."

38.     During the May 3, 2023 earnings call, Defendant Gerstel stated:

I'll move to search advertising now. ***It has been reliable and significant growth driver for Perion and has become even bigger contributor based on recent investment Microsoft has made in ChatGPT***. With that in mind, I'd like to quote Satya Nadella, CEO of Microsoft, who said on the recent earnings call last week, when he talking about Bing and ChatGPT-4, he said, we're seeing progress in share gains. We continue to innovate with the first of its kind AI powered feature. We see that when people use their new AI feature, their engagement with Bing goes up. We look forward to future, where Chat become a new way for people who seek information. This is a generation achieved in the largest software category, search. This is a truly profound, and it's just the beginning. It means that ad search category that is being matured and faced a slow growth is now one of the most dynamic categories in it.

Our first quarter reflects that search numbers were boosted by a significant increase of 29% in the number of publishers. They sense the potential and want to be part of it. As a result, average daily traffic increased dramatically by nearly 50% year-over-year and are now close to $30 million monetized search a day on an average basis. ***We believe that the massive media attention to ChatGPT-4 has driven a material portion of this and that we'll continue to see growth that exceeds our normative trajectory. Microsoft Bing has the real competitive advantage now and that cascades immediately to our business***.

39.     The statements referenced above in ¶¶25-38 were materially false and/or misleading when made because they failed to disclose the following adverse facts pertaining to Perion's search advertising business, which were known to Defendants or recklessly disregarded by them as follows:

a)      Perion's search advertising business was not a reliable and significant growth driver;

      b)     Perion's long-term relationship with Microsoft and search services agreement would not provide stability for Perion's search advertising business;

      c)     there was an increased risk of Microsoft acting to unilaterally change its advertising pricing and mechanisms to the detriment of Perion while the search services agreement was in place;

      d)     Perion's AI technology and Microsoft's investment in ChatGPT would not protect or grow Perion's search advertising revenue; and

      e)     that, based on the foregoing, Defendants lacked a reasonable basis for their positive statements about Perion's business, operations, and prospects related to search advertising.

40. On April 8, 2024, Perion revealed reduced revenue expectations caused by Microsoft Bing's changes to search advertising pricing and mechanisms. Perion reported decreased expectations for Q1 2024 revenue and adjusted EBITDA, and the Company also reduced its full-year guidance to revenue of only $590 million to $610 million, down 19% year over year, from an original range of $860 million to $880 million, or growth of 17% year over year.

41. On this news, the price of Perion common stock declined by $8.61 per share, or approximately 40%, from $21.11 per share on April 5, 2024 to close at $12.50 on April 8, 2024.

## ADDITIONAL SCIENTER ALLEGATIONS

42. As alleged herein, Defendants acted with scienter in that they knew the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents and in actions intended to manipulate the market price of Perion's common stock as primary violations of the federal securities laws. As set forth

elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Perion, their control over, and/or receipt or modification of, Perion's allegedly materially misleading misstatements, and/or their associations with the Company that made them privy to confidential proprietary information concerning Perion, participated in the fraudulent scheme alleged herein. The adverse events at issue also involved Perion's main source of revenue, the Microsoft search services agreement, as well as its core search advertising segment.

43.     As such, the Individual Defendants knew or were reckless in not knowing of the undisclosed facts detailed herein.

## LOSS CAUSATION/ECONOMIC LOSS

44.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

45.     On April 8, 2024, Perion revealed reduced revenue expectations caused by Microsoft Bing's changes to search advertising pricing and mechanisms. Perion reported decreased expectations for Q1 2024 revenue and adjusted EBITDA and also significantly reduced its full-year revenue guidance. On this news, the price of Perion common stock declined by $8.61 per share, or approximately 40%, from $21.11 per share on April 5, 2024 to close at $12.50 on April 8, 2024.

46.     The decline in Perion's stock price is directly attributable to the announcements of reduced revenue guidance and decline in search advertising activity as a result of advertising pricing and mechanisms implemented by Microsoft Bing.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

47.     Plaintiff is entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted in this complaint against

13

Defendants are predicated in part upon material omissions of fact that Defendants had a duty to disclose.

48.    In the alternative, Plaintiff is entitled to rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

a)  Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b)  The omissions and misrepresentations were material;

c)  The Company's common stock traded in efficient markets;

d)  The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e)  Plaintiff and other members of the class purchased the Company's common stock between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

49.    At all relevant times, the markets for the Company's stock were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news ire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's common stock, which reflected all information in the market, including the misstatements by Defendants.

**NO SAFE HARBOR**

50.     The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as forward-looking statements when made.

51.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**CLASS ACTION ALLEGATIONS**

52.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Perion common stock between February 9, 2021 through April 5, 2024, inclusive. Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

54.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

      a)  Whether Defendants violated the Exchange Act;

      b)  Whether Defendants omitted and/or misrepresented material facts;

c)  Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d)  Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e)  Whether the price of the Company's stock was artificially inflated; and

f)  The extent of damage sustained by Class members and the appropriate measure of damages.

55.    Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

56.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

57.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### COUNT I
**For Violations of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
(Against All Defendants)**

58.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.    During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

60. Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

61. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

**COUNT II**
**For Violation of §20(a) of the Exchange Act**
**(Against All Defendants)**

62. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63. Defendants acted as controlling persons of the Company within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents where false or misleading statements were made and other statements alleged by Plaintiff to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading. The Company controlled the Individual Defendants and all of its employees. By reason of such conduct, Defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

C.      Awarding Plaintiff and other members of the Class their reasonable costs and expenses in this litigation, including attorneys' fees, experts' fees and other reasonable costs and disbursements; and

D.      Awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED:  April 16, 2024                    Respectfully submitted,

                                          /s/ Jeffrey C. Block
                                          Jeffrey C. Block
                                          Sarah E. Delaney
                                          **BLOCK & LEVITON LLP**
                                          260 Franklin Street, Suite 1860
                                          Boston, MA 02110
                                          (617) 398-5600 phone
                                          jeff@blockleviton.com
                                          sarah@blockleviton.com

                                          *Counsel for Plaintiff*